|                          |   |                              |
|--------------------------|---|------------------------------|
|                          | : |                              |
| AARON OSTUNI,            | : |                              |
|                          | : |                              |
|   plaintiff,   | : |                              |
|                          | : |                              |
| v.                       | : | CASE NO. 3:19-cv-00021(RAR)  |
|                          | : |                              |
| ANDREW SAUL,            | : |                              |
| ACTING COMMISSIONER     | : |                              |
| OF SOCIAL SECURITY,     | : |                              |
|                          | : |                              |
|   defendant.   | : |                              |

## RULING ON PENDING MOTIONS

Aaron Ostuni ("plaintiff") appeals the final decision of
the Commissioner of Social Security ("the Commissioner")
pursuant to 42 U.S.C. § 405(g).  The Commissioner denied
plaintiff's application for Social Security Disability Benefits
in a decision dated November 9, 2018.  Plaintiff timely appealed
to this court.  Currently pending are plaintiff's motion for an
order reversing and remanding his case for a hearing (Dkt. #16-
1) and defendant's motion to affirm the decision of the
Commissioner.  (Dkt. #19.)

For the reasons that follow, the plaintiff's motion to
reverse, or in the alternative, remand is DENIED and the
Commissioner's motion to affirm is GRANTED.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[2]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on January 3, 2017. (R. 189.)[3] Plaintiff alleged a disability onset date of November 25, 2015. (R. 189.) At the time of application, plaintiff alleged that he suffered from anxiety, back and knee injuries, and diabetes. (R. 189.) The initial application was denied on July 19, 2017, and again upon reconsideration on September 8, 2018. (R. 187–203, 204–215).

---

Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[3] The Court cites pages within the administrative record as "R. ___."

Plaintiff then filed for an administrative hearing which was held by ALJ John Aletta (hereinafter the "ALJ") on August 24, 2018. (R. 60-139.) The ALJ issued an unfavorable decision on September 26, 2018. (R. 7-25.) Plaintiff sought a review by the Appeals Council, which was denied on November 9, 2018. (R. 1-4.) Plaintiff then filed this action seeking judicial review. (Dkt. #16-1.)

**DISCUSSION**

Plaintiff asserts that the ALJ failed to develop the record; the ALJ's opinion is not supported by substantial evidence; the ALJ violated the treating physician rule and erroneously examined evidence of nonmedical sources; and the ALJ failed to consider the testimony of the vocational expert. (Dkt. #16-2, at 6, 15, 17, 27, 28.) Based on the following, the Court finds that the ALJ appropriately considered all the evidence, adequately developed the record, did not violate the treating physician rule, and that the ALJ's opinion was based on substantial evidence. The Court affirms the ALJ's decision.

## I. The ALJ's Decision is Supported by Substantial Evidence

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial

evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

A claimant seeking social security benefits must bear the burden of showing that he has a medically severe impairment or combination of impairments. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). "The severity regulation requires the claimant to show that he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)). It is the plaintiff's burden to provide "medical evidence which demonstrates the severity of her condition." Merancy v. Astrue, No. 3:10-cv-1982(WIG), 2012 WL 3727262, at *7 (D. Conn. May 3, 2012).

> a. The ALJ's analysis of the severity of plaintiff's spinal impairment was supported by substantial evidence.

Plaintiff asserts that the record demonstrates that he satisfies the Musculoskeletal Listing 1.04 and therefore the

ALJ's determination at step three is unsupported by substantial evidence. (Dkt. #16-2, at 6.) The Court disagrees.

Listing 1.04, disorders of the spine, requires the plaintiff to prove a compromised nerve root or spinal cord with either:

> (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> (B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff asserts that the ALJ failed to consider evidence demonstrating that plaintiff satisfied listing §1.04 and thus the ALJ's determination is unsupported by the record. (Dkt. #16-2, at 7, 10, 12.) First, plaintiff asserts that although the ALJ determined that the record does not show compromise of the cauda equina, a March 3, 2014 MRI found there to be "a minor degree of central spinal stenosis, further crowding the cauda equina." (Dkt. #16-2, at 7, 15.) Second, plaintiff states that

the ALJ did not refer to, and therefore failed to consider, the March MRI; a December 11, 2012 electromyograph ("EMG") and subsequent medical records analyzing the EMG; and April 11, 2018 progress notes demonstrating atrophy. (Dkt. #16-2, at 10.) Finally, plaintiff states that he satisfies listing §1.04 as he suffered from atrophy with associated muscle weakness. (Dkt. #16-2, at 12.)

Plaintiff asserts that the ALJ failed to consider the March 3, 2014 MRI; the December 11, 2012 EMG; and April 11, 2018 progress notes because the ALJ did not specifically cite them. The Court rejects plaintiff's assertion. The ALJ was not obligated to cite to all evidence considered and a failure to cite to every piece of evidence in the record does not mean that the ALJ failed to consider it. See Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012).

The Court also rejects plaintiff's assertion that the ALJ's determination is not supported by substantial evidence because the March 3, 2014 MRI demonstrates crowding of the cauda equina. Plaintiff's most recent MRI on January 18, 2016 demonstrated that his cauda equina was normal. (R. 1204.) The 2014 MRI was a year before plaintiff's alleged onset date whereas the 2016 MRI was during the relevant time period. (R. 821, 1204.)

While there is a conflict between the two MRIs, "[g]enuine conflicts in the medical evidence are for the Commissioner to

resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Notably, plaintiff's treating physician did not opine that

plaintiff had a compromised cauda equina. (R. 721.) Thus, it

was reasonable for the ALJ to reject the 2014 MRI in favor of

more recent evidence establishing a normal cauda equina and thus

plaintiff did not suffer a compromised nerve root.

Lastly, the Court rejects plaintiff's assertion that he

satisfies listing §1.04 because the record demonstrates that he

suffered atrophy with associated muscle weakness. The ALJ

determined there was not a combination of a compromised nerve

root and atrophy with associated muscle weakness — as required

by the listing. (R. 15.) The Court has already determined that

substantial evidence supports the ALJ's determination that

plaintiff did not suffer a compromised nerve root. Therefore,

the ALJ's determination that there was not a combination of a

compromised nerve root and atrophy with associated muscle

weakness is supported by substantial evidence. It is irrelevant

whether substantial evidence supports plaintiff's assertion that

he suffers from atrophy with associated muscle weakness. Bonet

v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order).

Plaintiff has failed to show that a reasonable mind could

not find that substantial evidence supports the ALJ's

conclusion. The ALJ's determination that plaintiff did not

suffer from an impairment or combination of impairments that met

or medically equaled listing §1.04 is therefore supported by substantial evidence.  <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).

> *b. The ALJ's evaluation of plaintiff's nonsevere impairments is supported by substantial evidence.*

Plaintiff asserts that the ALJ's determination that plaintiff's right knee impairment, post-fractured left wrist, and acromioclavicular osteoarthritis of the right shoulder are nonsevere is not supported by substantial evidence.  (Dkt. #16-2, at 16.)  The Court disagrees.

A severe impairment is "any impairment or combination of impairments which significantly limits [a plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. 416.920(c).  A severe impairment must meet the durational requirement, such that the impairment be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. 416.909.

The ALJ acknowledged that plaintiff suffered from a healed impacted fractured wrist, acromioclavicular osteoarthritis, and a right knee impairment.  (R. 14.)  The ALJ determined these impairments were nonsevere as they create minimal limitations in plaintiff's ability to work.  (R. 13–14.)

Foremost, the Court rejects plaintiff's assertions that the ALJ failed to consider evidence demonstrating a limited range of

motion of plaintiff's right knee and the pain in plaintiff's feet by failing to cite to it specifically. [4]

The Court also rejects plaintiff's assertion that the ALJ was required to explain how plaintiff's conditions did not produce plaintiff's pain. The ALJ never stated that plaintiff was not in pain. (R. 13-15.) In fact, the ALJ repeatedly noted that plaintiff's impairments caused him pain. (R. 13-14.) The ALJ merely stated that pain without limitations is insufficient to demonstrate a disability. (R. 14-15.) The ALJ's statement is a correct statement of the law. See 20 C.F.R. § 404.1529(a)("We will then determine the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the plaintiff's] symptoms affect [the plaintiff's] ability to work."). The Court therefore rejects plaintiff's assertion.

       i.    The ALJ's determination that plaintiff's knee pain was nonsevere is supported by substantial evidence.

_____

[4] Plaintiff presents a list of evidence that the ALJ allegedly failed to consider. Plaintiff points out that the ALJ did not cite to it specifically. Having already addressed this misapplication of the law, the Court will not examine plaintiff's remaining assertions. The Court notes, however, that the ALJ specifically cited to one of the three records plaintiff highlights which contains almost verbatim the same language as the second record. (R. 14, 775, 776.)

Plaintiff asserts that, as medical evidence demonstrates a limited range of motion in plaintiff's right knee, the ALJ's evaluation of plaintiff's right knee impairment is not supported by substantial evidence. (Dkt. #16-2, at 16.) The Court disagrees.

The ALJ stated that while examination demonstrated tenderness and crepitus of plaintiff's right knee, plaintiff's orthopedic examination did not document significant limitations. (R. 13-14, 775.) On July 11, 2017, Dr. Kogan determined that while plaintiff's activities are limited due to pain, upon examination plaintiff had a full range of motion and strength in his lower extremities. (R. 1232-35.) Dr. Kogan also found that plaintiff had a normal gait despite his use of a cane. (R. 1234-35.) Dr. Kogan's findings are consistent with plaintiff's examination on July 20, 2016 by Dr. Grauer, who found that plaintiff's lower extremities were unremarkable upon examination. (R. 2575-78.)

Plaintiff has failed to show that a reasonable mind could not find that substantial evidence supports the ALJ's conclusion. The ALJ's determination that plaintiff's right knee impairment was nonsevere is therefore supported by substantial evidence. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

ii. The ALJ's determination that plaintiff's post-fractured wrist was nonsevere is supported by substantial evidence.

Plaintiff asserts that the ALJ's evaluation of plaintiff's post-fractured wrist is not supported by substantial evidence because the record demonstrates plaintiff's impairment caused him pain. (Dkt. #16-2, at 16.) The Court disagrees.

The ALJ stated that plaintiff complained of continued stiffness and soreness of his left wrist following a healed fracture from a 2016 accident. (R. 14.) As the ALJ noted, examination revealed a painful range of motion on January 4, 2017. (R. 770.) However, plaintiff demonstrated full range of motion and strength and fine finger movements on July 11, 2017. (R. 1232-35.) Plaintiff does not present any evidence that his pain resulted in functional limitations that prevented him from working. Plaintiff incorrectly asserts that pain alone is sufficient. See (Dkt. #16-2, at 16.)

Plaintiff has failed to show that a reasonable mind could not find that substantial evidence supports the ALJ's conclusion. The ALJ's determination that plaintiff's post-fractured left wrist was nonsevere is therefore supported by substantial evidence. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

iii. While substantial evidence does not support the ALJ's determination that plaintiff's acromioclavicular osteoarthritis of the right shoulder in nonsevere, this error was harmless.

13

Plaintiff asserts that the ALJ's evaluation of plaintiff's acromioclavicular osteoarthritis is not supported by substantial evidence because the record supports plaintiff's pain. (Dkt. #16-2, at 16.) The Court agrees that the ALJ's determination is unsupported by substantial evidence but finds that the error is harmless.

The ALJ noted that plaintiff suffered right shoulder pain, accompanied by numbness and tingling in his hand and arm. (R. 14.) As the ALJ noted, an MRI on June 16, 2017 found only mild acromioclavicular osteoarthritis. (R. 1230.) An examination on February 9, 2017 found no swelling or deformities and plaintiff was discharged with a sling and pain medication. (R. 874.) While plaintiff cites to subjective reports in the record of terrible pain, such subjective reports are insufficient. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).

The ALJ "is not required to accept the [plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." Id. (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ must consider "all of the evidence of record, including [the plaintiff's] testimony and other statements with respect to his daily activities." Id. at 50.

The record demonstrates that plaintiff has a limited range of motion in his right shoulder.  (R. 874, 1039.)  The ALJ failed to address this in his opinion.  While the plaintiff's limited range of motion was determined based on plaintiff's subjective assertions of pain, the ALJ had an obligation to assess plaintiff's credibility and the consistency of plaintiff's pain with the record.  Genier, 606 F.3d at 49.

The ALJ did not engage in a credibility analysis of plaintiff and his assertions of pain.  Therefore, his determination cannot be supported by substantial evidence. However, the ALJ's failure to engage in a credibility analysis is not grounds for remand per se.  Id.

Such an error is harmless where the ALJ found other severe impairments at step two and continued through the analysis. Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010). Because the ALJ found other severe impairments at step two and continued the analysis this error was harmless.  Id.  Thus, remand is not warranted.

Therefore, the ALJ's examination of whether plaintiff's acromioclavicular osteoarthritis limited plaintiff's ability to work was erroneous.  The ALJ's determination cannot be supported by substantial evidence because the ALJ's failed to examine plaintiff's credibility and address plaintiff's limited range of

motion in his right shoulder.  However, this error was harmless and does not require remand.

>     iv.  The ALJ's evaluation of plaintiff's neuropathy
>          and pain is supported by substantial evidence.

Plaintiff asserts that the ALJ's determination that plaintiff's neuropathy is nonsevere is unsupported by substantial evidence because the ALJ made "no mention" of the pain in plaintiff's feet.  (Dkt. #16-2, at 16.)  The Court disagrees.

The ALJ considered the pain n plaintiff's feet multiple times in his decision.  (R. 13, 18.)  The ALJ noted that "[a]lthough [plaintiff] reported pain and numbness in his feet, examination in February 2017 showed a normal monofilament test, normal strength of the lower extremities, normal tone, normal movement, normal coordination, and that the claimant was ambulating normally."  (R. 13.)  The ALJ continued, "[a]lthough I find the [plaintiff's] diabetes with polyneuropathy is a nonsevere impairment, his reported symptoms, particularly with regard to the pain and numbness in his feet were considered in the formulation of the [RFC]."  (R. 13.)

The ALJ later noted that plaintiff experienced pain, numbness, and tingling in his feet, and that plaintiff was experiencing trouble walking, standing, and sitting.  (R. 18.)  The ALJ then noted a decreased sensation in plaintiff's feet but

again explained that examinations demonstrated normal range of motion, strength, and reflexes.  (R. 18.)

While the ALJ may not have specifically referenced plaintiff's foot pain as neuropathy, the ALJ discussed plaintiff's symptoms and examined their consistency with the record.  The ALJ noted that these symptoms were included in the RFC and therefore any potential error was harmless.  See O'Connell v. Colvin, 558 Fed. Appx. 63, 65 (2d Cir. 2014); Reices-Colon v. Astrue, 523 Fed. Appx. 796, 798 (2d Cir. 2013); Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010).

Plaintiff has failed to show that a reasonable mind could not find that substantial evidence supports the ALJ's conclusion.  Thus, the ALJ's determination was supported by substantial evidence.  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  Further, any error of the ALJ's RFC determination was harmless.

*c. Activities of daily living preclude disability*

Plaintiff asserts that substantial evidence does not support the ALJ's determination that plaintiff's activities of daily living prove an ability to participate in substantially gainful employment.  (Dkt. #16-2, at 18.)  The Court disagrees.

Once a plaintiff establishes a medically determinable impairment the ALJ "must then evaluate the intensity and persistence of [the plaintiff's] symptoms so that [the ALJ] can

determine how [the plaintiff's] symptoms limit [their] capacity for work." 20 C.F.R. 404.1529(C)(1). The ALJ will consider medical and nonmedical evidence. Id. at 404.1529(c)(2), (3).

"Factors relevant to [plaintiff's] symptoms, such as pain, which [an ALJ] will consider include: (i) [plaintiff's] daily activities; (ii) The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms; . . . ." Id. at 404.1529(c)(3). An ALJ may properly determine that a plaintiff's complaints are inconsistent with the record where medical evidence does not sufficiently demonstrate disability and the plaintiff's daily activities demonstrate an ability to perform work. Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009).

In Poupore, the plaintiff complained of pain although the objective medical evidence did not support such assertions. Id. The plaintiff stated that he cared for his one-year old child, sometimes vacuumed, washed dishes, occasionally drove, watched television, read, and used the computer. Id. The Second Circuit determined that substantial evidence supported the ALJ's determination that the plaintiff could perform light work. Id.

The ALJ determined that plaintiff had the following severe impairments, degenerative disc disease of the lumbar spine, anxiety disorder, and depressive disorder. (R. 13.) As in

Poupore, the plaintiff's medical records do not demonstrate that plaintiff is precluded from performing light work due to pain.

First, the ALJ determined that although plaintiff suffered from degenerative disc disease, plaintiff's complaints of back pain were inconsistent with the record.  (R. 17.)  As the ALJ noted, plaintiff had complained of back pain since 2008.  (R. 18.) Despite such complaints, medical examinations in 2016 and 2017 demonstrated that plaintiff had full strength and range of motion in his back.  (R. 627, 657, 754, 757, 838, 857, 874, 883, 904, 912, 921, 929, 943, 992, 1005, 1063, 1066, 1070, 2577, 2614.)  Notably, plaintiff reported no back pain on more than one occasion.  (R. 857, 874, 975, 1004, 1063.)

Similarly, plaintiff reported that he lives alone in an apartment on the third floor, climbs stairs to get to his apartment, prepares his own food, takes care of his own personal hygiene, does his own laundry and grocery shopping, cleans his own apartment, reads novels, watches television on his phone, and visits friends and family weekly.  (R. 69-70, 85-88.) Plaintiff's asserted limitations due to pain are inconsistent with plaintiff's activities of daily living.  (R. 18-20.)

Plaintiff has failed to show that the back pain precluded him from participating in any substantially gainful activity. While plaintiff had repeat visits for episodes of aggravated back pain brought on by activities of daily living, subsequent

examination demonstrated full strength and normal range of motion. (R. 838, 883, 904, 912, 921, 929, 943, 992.) On multiple occasions, plaintiff left the hospital after an episode, against the advice of the treating physicians, when he was not proscribed the pain medication he sought. (R. 683, 904.) Plaintiff was also removed as a patient because he was "red flagged" for filing multiple opioid prescriptions. (R. 2598, 2610.) Such incidents speak to the credibility of plaintiff's alleged pain and the effect on his activities of daily living in those circumstances.

For the purpose of this analysis, it is irrelevant that evidence supports that the plaintiff was in pain. Rather, the issue is whether substantial evidence supports the ALJ's determination that plaintiff's asserted level of pain was inconsistent with the record. Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013). Plaintiff has failed to show that a reasonable mind could not find that substantial evidence supports the ALJ's determination. Thus, the ALJ properly examined plaintiff's activities of daily living and his determination is supported by substantial evidence.

## II. The ALJ Did Not Violate the Treating Physician Rule

Plaintiff asserts that the ALJ violated the treating physician rule by not assigning controlling weight to the opinions of PA-C Partola, LPC Gelinas and Doctors Matza, Matusz,

Delizio, and Sobel. (Dkt. #16-2, at 20-24.) The Court disagrees.

The medical opinions of treating physicians are generally given more weight than other evidence. The treating physician rule stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within

21

the province of the ALJ to credit portions of a treating
physician's report while declining to accept other portions of
the same report, where the record contain[s] conflicting
opinions on the same medical condition." Pavia v. Colvin, No.
6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4,
2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.
2002)).

In determining the amount of weight to give to a medical
opinion, the ALJ considers the examining relationship, the
treatment relationship, the length of treatment, the nature and
extent of treatment, evidence in support of the medical opinion,
consistency with the record, specialty in the medical field, and
any other relevant factors. 20 C.F.R. § 404.1527. It is
generally appropriate to "give more weight to the opinion of a
specialist about medical issues related to his or her area of
specialty than to the opinion of a source who is not a
specialist." 20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must
'comprehensively set forth [his] reasons for the weight assigned
to a treating physician's opinion.'" Greek v. Colvin, 802 F.3d
370, 375 (2d Cir. 2015) (citing Burgess, 537 F.3d at 129)
(alteration in original). The ALJ may not simply substitute his
own judgment for that of the treating physician, and failure to

provide good reasons for the weight given to a treating physician's opinion is grounds for remand.  Id.

"SSA regulations provide a very specific process for evaluating a treating physician's opinion" and failure to "*explicitly consider*" any of the named factors is grounds for rejecting the ALJ's decision.  Greek, 802 F.3d 370, 376 (2d Cir. 2015) (emphasis added).  However, an ALJ is not required to explicitly cite to the treating physician rule or its factors. Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017). It is sufficient that the ALJ substantively reference the rule and provide good reason for not assigning a plaintiff's treating physician controlling weight.  Id.

*a. The ALJ properly evaluated Dr. Matza's opinion*

While the ALJ did not specifically reference the treating physician rule, the ALJ referenced it in substance.  Regarding Dr. Matza, the ALJ acknowledged plaintiff's treatment relationship, Dr. Matza's specialty, Dr. Matza's consistency with the record, evidence supporting Dr. Matza's opinion, and the nature of the treating relationship.  (R. 20.)

The ALJ ultimately found that Dr. Matza's opinion was inconsistent with the record.  As the ALJ noted, Dr. Matza opined that plaintiff could never stand, never walk, only sit for one hour a day, rarely lift or carry over ten pounds, and never stoop, bend, crouch, squat, or twist.  (R. 414, 415, 735–

738.)  Dr. Matza incorrectly stated that plaintiff did not have a substance abuse problem and that plaintiff could only rarely climb stairs.  (R. 736, 738.)  The ALJ reasonably concluded that the opinion was extreme and unsupported by the record.  (R. 20.)

First, the record demonstrates that plaintiff maintained full strength and range of motion in his back despite complaints of pain.  (R. 627, 657, 754, 757, 838, 857, 874, 883, 904, 912, 921, 929, 943, 992, 1005, 1063, 1066, 1070, 2577, 2614.)  Second, Dr. Matza's opinion that plaintiff could very rarely climb stairs is without support and contradicted by other evidence in the record as plaintiff lives in a third-floor apartment and climbs stairs each time he enters and leaves his apartment, sometimes while carrying laundry or groceries.  (R. 69–70, 85, 91.)  Finally, Dr. Matza's opinion that plaintiff could never stand, walk, bend or crouch is inconsistent with plaintiff's testimony that he cleans his own apartment, stands in the shower, and goes for walks with friends.  (R. 93–97.)

The ALJ noted these inconsistencies among others.  The ALJ's analysis presents good reason for his decision not to afford Dr. Matza controlling weight.  The ALJ therefore did not violate the treating physician rule.[5]

---

[5] Plaintiff asserts that that ALJ violated the treating physician rule by giving the opinions of Doctors Kogan and Grauer more weight than Dr. Matza's opinion.  (Dkt. #16-2, at 21–22.)  Because the Court determined that the ALJ did not err in

*b. The ALJ properly evaluated PA-C Partola's opinion*

Plaintiff asserts that the ALJ violated the treating physician rule by assigning PA-C Partola's opinion little weight. (R. 21.) The Court disagrees.

The ALJ referenced the treating physician rule in substance rather than explicitly. The ALJ commented on the nature and length of the treating relationship, the consistency of PA-C Partola's opinion with the record, and the evidence supporting and refuting the opinion. (R. 21.) This is sufficient to satisfy the treating physician rule. See Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).

PA-C Partola opined that in an eight-hour work day, plaintiff could sit for less than two hours, walk and stand for less than two hours, rarely lift more than 10 pounds, and would be off task about 25% of the day. (R. 21, 2526–31.) As the ALJ noted, PA-C Partola opined that plaintiff required a cane to walk, however, her observations demonstrated that plaintiff can ambulate independently without a cane and had a normal gate and Romberg test. (R. 730, 1234.) While PA-C Partola opined that plaintiff had limited use of his arms, observations consistently demonstrated that plaintiff had a full range of motion and strength in his upper and lower extremities. (R. 627, 754, 757–

---

determining Dr. Matza was not entitled to controlling weight, the Court will not address this argument.

758, 857, 874, 904, 912, 921, 929, 943, 992, 1005, 1063, 1066, 1070, 1234, 2577.)

Finally, the ALJ noted that PA-C Partola had a short treatment relationship with plaintiff. (R. 21.) PA-C Partola had only treated plaintiff for the month prior to her opinion. (R. 2526.) PA-C Partola had examined plaintiff twice before drafting her opinion and once while drafting her opinion. (R. 2589, 2593, 2595.) Based on PA-C Partola's inconsistencies with the record and the almost insignificant treating relationship, the ALJ did not err by determining that PA-C Partola's opinion was to not be afforded controlling weight.

*c. The ALJ properly evaluated Dr. Matusz's opinion*

Plaintiff asserts that the ALJ violated the treating physician rule by not affording Dr. Matusz's opinion controlling weight. The Court disagrees.

The ALJ made reference to the treating physician rule in substance rather than explicitly. The ALJ noted the nature and length of the treating relationship, Dr. Matusz's specialty, and the opinion's inconsistency with the record. (R. 21.) Specifically, the ALJ noted that Dr. Matusz failed to complete the majority of the form and simply wrote "N/A." (R. 727-732.) Dr. Matusz simply noted that he has treated plaintiff for six months and neglected to report with what frequency. (R. 727.)

Plaintiff asserts that the ALJ failed to recognize that Dr. Matusz treated plaintiff for six months. (Dkt. #16-2, at 23.) However, the ALJ clearly stated "this provider indicated that he treated claimant for six months but fails to indicate the frequency of providing such treatment." (R. 21.) Plaintiff's assertion is contradicted by the record.

Because Dr. Matusza's opinion was inconsistent with the record and substantially lacking, the ALJ did not violate the treating physician rule by failing to afford Dr. Matusz's opinion controlling weight.

*d. The ALJ properly evaluated LPC Gelinas's opinion*

Plaintiff asserts that the ALJ violated the treating physician rule by not affording LPC Gelinas' opinion controlling weight. (Dkt. #16-2, at 23.) LPC Gelinas opined that plaintiff had a limited ability to exercise good judgment and handle frustration. (R. 388–397, 1091–1095.) Plaintiff asserts that LPC Gelinas' opinion is consistent with the record based on plaintiff's outbursts in his doctor's offices when physicians refused to proscribe him opioids, his mother's testimony, and plaintiff's testimony that he is unable to interact with groups of people. (Dkt. #16-2, at 23–24.) It is irrelevant, however, whether evidence in the record supports plaintiff's assertion, the Court examines whether the ALJ provided good reason for not

affording controlling weight to his opinion. The ALJ has provided good reason.

The ALJ referenced the treating physician rule in substance rather than explicitly. The ALJ noted the nature and length of the treating relationship, LPC Gelinas' specialty, and the opinion's consistency with the record. (R. 22.) LPC Gelinas treated plaintiff for a period of six months with sessions as frequently as once per month to once per week. (R. 388.) The ALJ noted, however, that LPC Gelinas' opinion was inconsistent with plaintiff's testimony and his activities of daily living. (R. 22.) The ALJ therefore assigned LPC Gelinas' opinion partial weight. (R. 22.)

LPC Gelinas opined that plaintiff had limited ability to exercise good judgment and handle frustration, a reduced ability to interact with others and marginally adjust to changes in his environment. (R. 389-392, 1092.) However, LPC Gelinas also opined that plaintiff had average coping skills, average or better than average social interactions and task performance. (R. 1093-1094.) Similarly, plaintiff testified that he has no issues getting along with other people, attends group meetings, goes for walks with friends, grocery shops twice a week on his own, and will go out to eat. (R. 85, 94-95.)

The ALJ referenced the treating physician rule in substance and examined each of the factors. The ALJ then provided good

reasons supported by substantial evidence in the record for giving LPC Gelinas' opinion partial weight. Thus, the ALJ did not violate the treating physician rule.

*e. The ALJ properly evaluated Delizio and Sobel's opinions*

Plaintiff asserts that the ALJ violated the treating physician rule by not affording Doctors Delizio and Sobel's opinions controlling weight due to the time period they addressed. The Court disagrees.

In January 2013, Doctors Delizio and Sobel opined that plaintiff had serious problems with his coping skills and performing work on a sustained basis. (R. 417–420.) Doctors Delizio and Sobel's opinions concern their treatment of plaintiff from May 24, 2012 through January 3, 2013, one week prior to the date of their opinions. (R. 417.)

A physician who does not treat the plaintiff during the period between his alleged onset date and DLI does not qualify as a treating physician. Monette v. Astrue, 269 Fed. Appx. 109, 112–13 (2d Cir. 2008) (citing Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)). However, "[t]he fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight. Indeed, we have regularly afforded significant weight to such opinions." Monette, 269 Fed. Appx. at 113. However, where substantial

evidence in the record demonstrates that the opinion is
inconsistent with the record, the ALJ does not err by refusing
to accord the later treating physician significant weight. Id.
(citing Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981)).

The opinions and treatment of Doctors Delizio and Sobel do
not extend into the relevant period, between plaintiff's onset
date and plaintiff's date of last insured. As such, they are
not treating physicians and are not entitled to controlling
weight. Their opinions may be entitled to significant weight,
however, if they are consistent with the medical evidence in the
record. The ALJ found that the opinions of Doctors Delizio and
Sobel were not consistent with plaintiff's current limitations.
(R. 22.)

Despite Doctors Delizio and Sobel's status as non-treating
physicians, the ALJ examined their opinions in accordance with
the treating physician rule. The ALJ referenced the treating
physician rule in substance rather than explicitly. The ALJ
noted the nature of the treating relationship and the opinion's
consistency with the record. (R. 22.) The ALJ noted, however,
that the opinions were inconsistent with the record and, as they
were drafted two years prior, did not cover the relevant period.
(R. 22.)

The ALJ then determined the opinions of Doctors Delizio and
Sobel are inconsistent with the record. None of plaintiff's

current treating physicians opined such extreme limitations as to plaintiff's coping skills and ability to work.  In fact, LPC Gelinas opined that plaintiff had average coping skills and average or better than average social interactions and task performance.  (R. 1093–1094.)  Plaintiff further testified that he did not have any issues getting along with others.  (R. 85.)

Thus, substantial evidence supports the ALJ's determination that the opinions of Doctors Delizio and Sobel were inconsistent with the record and should be afforded little weight.

### III. The ALJ'S Analysis of Plaintiff's GAF Score and Mother's Testimony Was Proper.

Plaintiff asserts that the ALJ erred by assigning the testimony of plaintiff's mother partial weight and his Global Assessment of Functioning (GAF) score little weight.  (Pl. 24–25.)  The Court disagrees.

The ALJ will consider "consider descriptions and observations of [the claimant's] limitations from [his or her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant], [his or her] family, neighbors, friends, or other persons."  20 C.F.R. 404.1545(a)(3).  "[T]the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, [however,] those opinions do not demand the same

deference as those of a treating physician." <u>Genier v. Astrue</u>,
298 Fed. Appx. 105, 108 (2 Cir. 2008). "[T]he ALJ [is] free to
discount [evidence of other sources] in favor of the objective
findings of other medical doctors." <u>Id.</u> at 108–109.

The ALJ did not completely reject the plaintiff's GAF score
and his mother's testimony, as plaintiff alleges. Rather, the
ALJ assigned the mother's testimony partial weight and the GAF
score little weight. Plaintiff's mother testified that she had
personally observed plaintiff and believed his assertions of
pain and anxiety to be true. (R. 135–36.) The ALJ noted that
the mother's testimony was not supported by objective medical
evidence and that she had a financial interest in plaintiff's
award of social security benefits. (R. 22.)

The Court already determined that substantial evidence
supports the ALJ's determination that the plaintiff's assertions
of pain were not entirely consistent with the record. The
testimony of plaintiff's mother echoes plaintiff's same
assertions. Analogously, substantial evidence supports the
ALJ's determination that the testimony is also inconsistent with
the record. Given the low deference accorded to nonmedical
sources, the ALJ's assessment of the mother's testimony in favor
of the objective medical evidence was proper.

The ALJ rejected plaintiff's GAF score, stating that it was
not simply an analysis of plaintiff's mental abilities but

included reference to plaintiff's economic and social status. (R. 22.)  Further, plaintiff's GAF score was a one-time assessment of the plaintiff's functional ability.  (R. 22.) Substantial evidence supports the ALJ's determination that the GAF score was entitled to little weight.  <u>Rock v. Colvin</u>, 628 Fed. Appx. 1, 4 (2d Cir. 2015).

Despite affording little weight to plaintiff's GAF score, the ALJ included social limitations in plaintiff's RFC.  The ALJ noted that plaintiff could only tolerate occasional interaction with the public, coworkers, and supervisors, and that plaintiff could not engage in teamwork.  (R. 16–17.)  Plaintiff does not object to this portion of the ALJ's RFC determination and does not suggest that plaintiff should have a limitation of no social interaction at work.  Therefore, the ALJ still considered plaintiff's allegations of anxiety although affording plaintiff's GAF score little weight.

The ALJ appropriately examined the evidence in support of the mother's testimony and GAF score and elected to discount the evidence as inconsistent with the medical evidence.  Thus, the ALJ did not err by assigning testimony of plaintiff's mother and GAF score partial and little weight, respectively.

**IV.  The ALJ Fully Developed the Record**

Plaintiff asserts that the ALJ failed to develop the record by not obtaining a consultative examination to determine what

functional limitations plaintiff's carpal tunnel syndrome might have on his ability to work.  (R. 27-28.)  The Court disagrees.

An ALJ has the affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)).  "[T]he ALJ has the discretion under the regulations to order a consultative examination in order to obtain further medical evidence for a determination about whether the claimant is disabled."  Tanner v. Colvin, 13-CV-746-JTC, 2015 WL 6442575, *5 (W.D.N.Y. Oct. 23, 2015).  "However, the ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need to do so."  Id.

Medical evidence and testimony in the record do not establish a need for a consultative examination where there is a lack of treatment and evidence demonstrating that plaintiff's impairment affected her ability to participate in substantially

gainful activity.  See Serianni v. Astrue, No. 607-CV-250 (NAM), 2010 WL 786305, at *6 (N.D.N.Y. Mar. 1, 2010).

Plaintiff has failed to demonstrate that the medical evidence and testimony in the record "establish that a consultative examination was necessary in order for the ALJ to reach a decision with regard to the severity of plaintiff's" carpal tunnel syndrome.  Id.  Plaintiff merely presents a diagnosis of carpal tunnel from February 7, 2018.  (R. 2579.) Plaintiff never mentioned any limitations regarding his carpal tunnel at the hearing before the ALJ.  (R. 61–141.)  Dr. Sanamandra recommended a splint if symptoms were "annoying enough."  (R. 2614.)  Plaintiff does not assert that he then was prescribed any treatment for his carpal tunnel or any reasons for a failure to receive treatment.  Further, the ALJ noted that plaintiff had full range of motion throughout all joints of the upper and lower extremities bilaterally, normal strength in all extremities, and normal fine finger movement.  (R. 1234.)

While the ALJ has a duty to develop the record, the mere diagnosis of any impairment is insufficient to require the ALJ to order a consultative examination — especially impairments that plaintiff does not assert are disabling.  Tanner v. Colvin, 13-CV-746-JTC, 2015 WL 6442575, *5 (W.D.N.Y. Oct. 23, 2015). Therefore, the ALJ did not have a duty to order a consultative

examination and thus the ALJ did not fail to develop the record by not ordering one.

## V.    The ALJ Properly Rejected the Vocational Expert's Hypothetical

Plaintiff asserts that the ALJ erred because he failed to accept the vocational expert's determination that plaintiff could not perform any jobs in the national economy if he required a cane to stand.  The Court disagrees.

At step five, the ALJ examines if the plaintiff can adjust to other work considering their RFC, past relevant work, age, and work experience.  20 C.F.R. 404.1520(a)(4)(v).  "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert."  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, . . . and accurately reflect the limitations and capabilities of the claimant involved."  Id. (internal quotation marks and citations omitted).

At the hearing, the ALJ proposed a hypothetical to the vocational expert in which the plaintiff would require a cane for walking.  (R. 113-14.)  The vocational expert explained that the use of a cane for walking would not interfere with a

hypothetical individual's ability to work as electronics-preassembler, traffic checker, mail sorter, or lens inserter. (R. 114, 124.) However, the vocational expert explained that requiring a cane to stand, coupled with the other limitations, would preclude an ability of a hypothetical individual to perform any jobs in the national economy. (R. 128.)

Plaintiff asserts that because he uses his cane all the time, the ALJ should have determined that plaintiff could not perform any substantially gainful activity. (Dkt. #16-2, at 28.) However, substantial evidence supports the ALJ's determination that plaintiff could stand without a cane and therefore the ALJ was not required to accept the vocational expert's finding.

Plaintiff asserts that he always requires use of his cane due to atrophy in his right leg. (R. 92.) However, plaintiff testified that he only needs his cane when he goes out and he seldomly uses the cane in his apartment. (R. 79.) Plaintiff also testified that he can easily maneuver around his apartment and stand in the shower without assistance. (R. 79, 93-94.)

The medical evidence similarly demonstrates that plaintiff does not require consistent use of a cane to steady himself. Plaintiff was proscribed a cane a year prior to plaintiff's ALJ hearing before the ALJ. (R. 79.) Doctors Kogan, Matza, and Matusz determined that plaintiff could walk without a cane. (R.

730, 738, 1234.)  Plaintiff was also assessed to have a normal
gait and a full range of motion and strength in his upper and
lower extremities throughout the record.  (R. 627, 754, 757-758,
857, 874, 904, 912, 921, 929, 943, 992, 1005, 1234, 1063, 1066,
1070, 2577.)

The ALJ noted that plaintiff's testimony and the medical
evidence undermine plaintiff's assertion that he needs the cane
to stand.  (R. 18-19.)  Plaintiff does not present any objective
medical evidence that undermines the ALJ's conclusion.

Therefore, substantial evidence supports the ALJ's
determination that plaintiff did not require a cane to stand.
Thus, the ALJ was not required to accept the vocational expert's
hypothetical that such use of a cane prevented plaintiff from
performing any jobs in the national economy.

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an
order to remand the Commissioner's decision (Dkt. #16-1) is
DENIED and the Commissioner's motion to affirm that decision
(Dkt. #19) is GRANTED.

This is not a recommended ruling.  The consent of the
parties allows this magistrate judge to direct the entry of a
judgment of the district court in accordance with the Federal
Rules of Civil Procedure.  Appeals can be made directly to the

appropriate United States Court of Appeals from this judgment.
See 28 U.S.C. § 636(c)(3).

    SO ORDERED this 25th day of November 2019, at Hartford,
Connecticut.

                                        /s/                     
                                        Robert A. Richardson
                                        United States Magistrate Judge